IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-114 |
| | ) | (VARLAN/GUYTON) |
| STEVEN P. GILLESPIE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant, Steve Gillespie's Motion to Suppress Evidence [Doc. 13] filed on November 28, 2005. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on January 18, 2006. Assistant United States Attorney Brownlow Marsh was present representing the government. Assistant Federal Community Defender Paula Voss was present representing the defendant, Steve Gillespie ("Gillespie"). The defendant was also present. At the conclusion of the hearing, the Court granted the defendant's request to have the option of filing a post-hearing brief on or before January 20, 2006. The Court took the motion and related filings under advisement on January 23, 2006.

The defendant has been indicted [Doc. 3] on one (1) count of possession with intent to distribute cocaine base ("crack"), a Schedule II controlled substance, a violation of 21 U.S.C. § 841. This charge arises out of the seizure of certain items, namely a clear plastic bag of powder cocaine and a clear plastic bag of crack cocaine, which were found on the defendant's person, and other pills and cash, which were found in a car being driven by Gillespie. Just prior to the seizure

1

of these items, Officer Kevin Thacker ("Officer Thacker") of the Oak Ridge Police Department conducted an investigatory stop of the defendant's vehicle and a pat down search for weapons, whereupon suspected powder cocaine and crack cocaine were found on the defendant's person. Officer Thacker alleges that the defendant admitted that it was crack but denied ownership of it. Gillespie was then arrested for possession of crack cocaine and the vehicle he was driving was impounded and inventoried.

Gillespie has moved to suppress all items of evidence seized and statements made during the September 2, 2003 stop of his car, alleging [Doc. 13] that (1) the officers had neither probable cause nor reasonable suspicion to stop his car; (2) as part of the stop, the defendant was illegally seized and then searched, whereupon cocaine was found on his person; (3) that any statement made by him was either tainted by an illegal arrest or unwarned; and (4) the search of his car and seizure of cash and pills was illegal. In response [Doc. 16], the government contends that (1) the officer had reasonable and articulable suspicion to stop the defendant for investigation of a reported incident of a person being threatened with a firearm, or in other words, an aggravated assault involving a firearm; (2) the officer had reasonable belief that the defendant was armed and dangerous and was entitled to perform a pat down search for weapons; (3) it contends that the defendant was not in custody for the purposes of <u>Miranda</u> at the time he talked to the officer about the cocaine found on his person during a pat down; and (4) the search of the defendant's car and seizure of cash and pills were conducted pursuant to a lawful inventory search incident to impounding the vehicle.

2

# I. FACTS

At the evidentiary hearing on this motion, the government called Kevin Thacker ("Officer Thacker") as its only witness. Officer Thacker testified that he is a patrol officer with the Oak Ridge Police Department ("ORPD"). This also was his assignment in September 2003.

Officer Thacker testified that on September 2, 2003, around 9:30 to 10:00 p.m., he and his partner, Officer Johnson, were patrolling South Illinois Avenue in Oak Ridge when they received a call from dispatch that there had been a report of a person being threatened with a firearm on Utica Circle. Officer Thacker described Utica Circle as an apartment complex that was completely fenced in with only one entrance and exit for vehicular traffic. The entrance/exit to Utica Circle is located on Tulsa Road. South Illinois Avenue intersects with Tulsa Road.

Officer Thacker testified that upon hearing the dispatch, he proceeded on to Tulsa Road from South Illinois Avenue where he pulled off to the side of the road, a short distance from the entrance to Utica Circle, and turned off his lights. Officer Thacker explained that due to the nature of the dispatch, in that a firearm was reportedly involved, the officers decided to wait for other units to arrive before proceeding on to Utica Circle.

Officer Thacker testified that about one minute after the officers stopped on Tulsa Road, the dispatcher came back across the radio and stated that the subject involved in the incident was leaving Utica Circle in a white, Oldsmobile or some type of GM model vehicle. Officer Thacker testified that as soon as he received that call, he saw a white vehicle drive up to the entrance/exit on Utica Circle, make a left turn on to Tulsa Road and proceed to drive in the direction where he was parked. He stated that when the vehicle drove past him, he noticed that the vehicle was a white vehicle matching the description of the vehicle that dispatch had reported. Officer

3

Thacker further described the windows of the vehicle as being very darkly tinted, such that he could not see into the vehicle.

Officer Thacker testified that he pulled directly behind the vehicle and began to follow it. Immediately after he pulled behind the suspect car, it pulled into the Amoco parking lot at the corner of Tulsa and Illinois Avenue. Officer Thacker pulled in behind the vehicle, stepped out of his patrol car with service weapon drawn and shouted for the driver to exit the vehicle. He stated that it was too dark to determine how many people were in the car. Officer Thacker asked the driver, defendant Gillespie, to turn around and step backwards towards the patrol car. He then ordered the defendant to lay on the ground in a prone position, holstered his weapon, secured the defendant in handcuffs, had him stand up and brought him to the rear of the patrol car. Officer Thacker testified that this was normal procedure for effecting a felony traffic stop.

Officer Thacker testified that once the defendant was positioned at the rear of the patrol car, he performed a pat down search for weapons. During the pat down, he shook the defendant's left pant leg to check around his ankle, and a clear plastic baggie fell out of the defendant's pants. Officer Thacker testified that the bag contained a white/tan, rock-like substance, known to him as crack cocaine, and a small plastic baggie that had a white powder substance in it. The defendant stated that it wasn't his. Officer Thacker asked what it was and where it came from. The defendant stated that he knew it was crack but that it wasn't his.

Officer Thacker placed the defendant under arrest and continued to search the defendant while his partner cleared the defendant's vehicle for other occupants. Once the vehicle was cleared, an inventory search was conducted. Officer Thacker testified that during the inventory search, a plastic bag containing 89 pink tablets was found in the center console, as well as a large

4

amount of cash totaling over $17,000.

On cross examination, Officer Thacker testified that around 10:30 p.m. he heard the call from dispatch relaying the information on this incident. He said he was on South Illinois Avenue and then turned on to Tulsa Road upon hearing the dispatch call. Officer Thacker confirmed that the dispatch was a "shots fired" report, and that such reports are high priority calls which makes him anxious.

Officer Thacker was shown a map of Oak Ridge, which he identified as accurately depicting the area and streets he was on that night [Ex. 1]. He testified that he parked his patrol car on Tulsa Road, between 200 and 300 yards from the entrance/exit to Utica Circle. Officer Thacker acknowledged that he had described the defendant as wearing a white t-shirt in his arrest report [Ex. 2]. Officer Thacker's report states that he responded to a subject being threatened by three individuals with a handgun; that the caller described the white Oldsmobile as the suspect car; that the car was reported to be leaving the area; and that while responding to Utica, a vehicle matching that description pulled out of Utica Circle and passed him on West Tulsa, whereupon he conducted a felony traffic stop of the vehicle [Ex. 2]. Officer Thacker agreed that he described the suspect car as a white, GM vehicle in his affidavit [Ex. 3].

Officer Thacker agreed that he had referenced Officer Reagan's report [Ex. 4] in the arrest report he generated from that night. He stated that he learned, after the fact, that Officer Reagan had responded directly to Utica Circle that evening and had made an arrest. Officer Thacker also agreed that the description contained in Officer Reagan's affidavit [Ex. 5], which described a black male with no shirt leaving in a white vehicle, could have been the same description he received from dispatch that night.

5

Officer Thacker stated that the defendant's vehicle turned off Utica Circle on to Tulsa Road and denied the possibility that it had not. Officer Thacker stated that from the time he stopped on Tulsa Road until the time the defendant's vehicle exited Utica Circle, no other vehicle entered or exited Utica Circle. Officer Thacker agreed that his patrol car was not hidden and that someone traveling down Tulsa Road would have had a clear visual of him. He also agreed that the vehicle the defendant was in did not try to evade him, did not try to turn and go the other way, and did not speed past him.

Officer Thacker acknowledged that the defendant had a t-shirt on when he exited the vehicle. He indicated that he had received mixed reports regarding the number of suspects involved and agreed that three people were not in the defendant's vehicle when he stopped it. He agreed that the defendant pulled into the Amoco without blue lights being activated and that the defendant was cooperative. Officer Thacker testified that Gillespie asked why he had been stopped. Officer Thacker stated that once the defendant was handcuffed, he informed Gillespie that he was just being detained. He further described to the defendant the call he'd received on Utica Circle and explained that he was only being patted down to make sure he didn't have any weapons. Officer Thacker testified that from the time the police pulled in behind the defendant's car and ordered him out of the vehicle, that the defendant would not be allowed to leave.

Officer Thacker again described checking the defendant's pant leg for a weapon. He said he grabbed the inside of the defendant's left thigh pant leg and shook it. Officer Thacker said that he does this because he does not want to get stuck with anything, such as a knife or needle.

On redirect examination, Officer Thacker stated that when the defendant's vehicle drove past him on Tulsa Road, he was in the next lane. Officer Thacker testified that the tint on the

6

vehicle was too dark for him to determine the number of people in the car, the race or gender of the people in the car, or whether or not the person driving had on a t-shirt. Officer Thacker further stated that he believed Officer Reagan's arrest in Utica Circle happened after he stopped the defendant in the Amoco parking lot. Although, on re-cross examination, he stated that he doesn't recall for sure, and the two events could have occurred at the same time.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Citizens also have the right to remain silent and the right to counsel under the Fifth and Sixth Amendments. The defendant contends (1) that the officers stopped his car in violation of his Fourth Amendment rights because they lacked reasonable suspicion to stop him, (2) that he was seized illegally, (3) that the evidence then seized was seized illegally, and (4) that any statement he made about the cocaine found on his person was tainted or unwarned. The Court will address each of these issues in turn.

### A. The Stop

Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. United States v. Ferguson, F.3d 385, 391 (6th Cir. 1993), cert. denied, 513 U.S. 828 (1994). A police officer may briefly detain an individual on less than probable cause: "[A] brief investigatory stop, or Terry stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable

7

suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)) (other citation omitted). Depending upon the circumstances giving rise to the investigative stop, the officer's reasonable suspicion permits the officer to detain the suspect while asking a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions. Martin, 289 F.3d at 398. If the suspect's answers fail to supply the officer with probable cause to arrest the suspect, then the officer must release the suspect. Id. at 397.

The government argues that Officer Thacker had reasonable suspicion to stop the defendant based upon the police dispatch of someone being threatened with a firearm and the timing and location of the officer's encounter with the defendant. It asserts that Officer Thacker received a call from dispatch at approximately 10:00 p.m. to respond to a report of someone being threatened with a firearm at an apartment located on Utica Circle, and that the subject involved was leaving Utica Circle in a white Oldsmobile or GM vehicle. It notes that, shortly thereafter, Officer Thacker observed the defendant's vehicle exit Utica Circle. It also notes that the defendant's vehicle matched the description given by dispatch and that it was the only vehicle in the area. Moreover, Officer Thacker could not see inside the vehicle as it passed. Finally, it maintains that the nature of the offense under investigation – aggravated assault with a firearm – required the police to investigate to preserve the public's safety. It concludes that these specific and articulable facts gave rise to Officer Thacker's reasonable suspicion that the defendant was the subject of the dispatch and was fleeing the area.

The defendant argues that at the point Officer Thacker saw the defendant near Utica Circle and initiated a felony traffic stop, the only information he possessed was a vague description

8

of a white car. Thus, the defendant contends that Officer Thacker had neither reasonable suspicion to detain the defendant, nor probable cause to arrest him.

The Court assesses the reasonableness of the officer's suspicion in light of the totality of the circumstances surrounding the stop. See United States v. Arvizu, 534 U.S. 266, 273 (2002); Martin, 289 F.3d at 398. Although an officer may not rely on a hunch to support a Terry stop, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274. The Court finds that on September 2, 2003 at or around 10:00 p.m., a police dispatcher radioed a report that a man had called 911 and stated that he was being chased by a man with a firearm on Utica Circle. The suspect was described as a black male driving a white Oldsmobile or white GM vehicle. Officer Thacker responded to the call and proceeded to Tulsa Road where he parked his patrol car approximately 200 to 300 yards from the only entrance/exit to Utica Circle. While parked in this location, he was passed by the defendant, who was driving a white vehicle and leaving the Utica Circle apartment complex.

The government is correct that the timing and location of the officer's observation of the defendant can in certain circumstances allow the officer to develop reasonable suspicion. The Sixth Circuit has affirmed a finding of reasonable suspicion when the vehicle was stopped at a location consistent in timing and direction with the vehicle reported to have fled a crime scene. See United States v. Hurst, 228 F.3d 751, 757 (6th Cir. 2000). In holding that the officer had reasonable suspicion to stop the defendant, the Hurst court observed that the defendant's car "roughly match[ed]" the description given by the victim in color and style as well as matching a second, more distinctive, description subsequently given by an off-duty officer. Id. at 757. It also emphasized that

9

the car was traveling in the reported direction and was spotted "at a location consistent with the time needed to travel to that point from the [burglary victim's] residence." Id. The court held that a discrepancy in the number of people in the car (three rather than two) could reasonably be explained in numerous ways and did not negate the officer's reasonable suspicion. Id.

In the present case, Officer Thacker testified that he spotted a white vehicle leaving the Utica Circle apartment complex, matching the description and location of the suspect vehicle given by police dispatch. The Court finds that the defendant's car matched the dispatched color and resembled the dispatched model. Additionally, the Court finds that the car's location and direction of travel were consistent with the suspect vehicle. The Court notes, as does the defendant, that while Officer Thacker corroborated the description of the car before initiating a felony traffic stop, he could not corroborate the description of the driver until after the stop when the driver exited the vehicle.

Looking to the totality of the circumstances, including the impact upon public safety, the Court finds that Officer Thacker did have specific and articulable facts to support a reasonable suspicion justifying the stop of the defendant's car. While the strength of isolated factors can be questioned, the Court does not view the factors in isolation:

> Even if each specific fact relied upon by the authorities to make a Terry stop would not be a basis for suspicion when considered in isolation, the reasonable suspicion necessary to support an investigatory stop can still be found when it is "based upon an assessment of all circumstances surrounding the actions of a suspected wrongdoer [,]" including those facts that would arouse suspicion only in someone experienced in law enforcement matters.

United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993) (alteration in original) (quoting United States v. Knox, 839 F.2d 285, 290 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989)). Instead, the

10

Court must consider the totality of the circumstances and, in the present case, finds those circumstances provided Officer Thacker with reasonable suspicion to stop the defendant.

### B. Propriety of Seizure and Search

Having concluded that the stop of the vehicle was proper, the Court now turns to the propriety of the events following the stop. The defendant contends that even if properly stopped, the manner in which the seizure and search were conducted were improper under Terry. The defendant argues that Officer Thacker's actions, in conducting an investigative stop with his gun drawn, using handcuffs to detain the defendant and performing a weapons pat down, were tantamount to a full blown arrest requiring probable cause. The government contends that Officer Thacker's actions were reasonably necessary under the circumstances, given the fact that the suspect was reported to have a firearm, and therefore Officer Thacker's use of force did not escalate the investigative stop into an arrest.

If an officer has a reasonable belief that the defendant is dangerous, the officer may order the defendant to get out of the car and may detain the defendant at gunpoint during an investigatory stop. See United States v. Hardnett, 804 F.2d 353, 357 (6th Cir. 1986) (holding that officers were justified in blocking the defendant's car, approaching with guns drawn, and ordering the occupants out of the car as a part of the Terry stop based upon a tip that the occupants were armed). "The mere use or display of force in making a stop will not necessarily convert a stop into an arrest" where the display or use of arms is viewed as "reasonably necessary for the protection of officers." Id. at 357; United States v. White, 648 F.2d 29, 34-35 (D.C. Cir. 1981). In this case, Officer Thacker was investigating a complaint of aggravated assault with a firearm. The timing,

11

location and description of the defendant's vehicle matched the description of the suspect vehicle given by dispatch.

Based on this information, the Court finds that Officer Thacker possessed an articulable and objectively reasonable belief that the defendant was potentially dangerous, making his display of arms, as he approached the defendant, reasonably necessary. Once the defendant was handcuffed, Officer Thacker explained to the defendant that he was not under arrest, but was only being detained for questioning in relation to the call he had received on Utica Circle. Under the circumstances of the stop, the Court finds Officer Thacker's use of force, to effect a stop, reasonable and not unduly intrusive, and therefore, did not convert the investigatory stop into an arrest. Based on this finding, the Court finds that the defendant was not illegally seized.

Having found that Officer Thacker possessed a reasonable belief that the defendant was dangerous and that his safety was at risk, the Court also finds that Officer Thacker was "entitled to take steps to ensure that [the defendant was] not armed" and could properly frisk the defendant for weapons. See Terry, 392 U.S. at 27 (holding that an officer may frisk a suspect for weapons as a part of an investigatory detention if the officer reasonably believes his safety is at risk); see also Adams v. Williams, 407 U.S. 143, 146 (1972). When conducting a frisk for weapons, the search should be "confined in scope to an intrusion reasonably designed to discover knives, clubs, or other hidden instruments for the assault of a police officer." See Terry, 392 U.S. at 29. Officer Thacker testified that he patted down the outer clothing of the defendant's waist and upper body. He testified that he did not place his hands in the defendant's pockets or under the outer surfaces of the defendant's clothing. Officer Thacker also testified that he checked around the defendant's ankle for weapons and gave the defendant's pant leg a brief shake to check for, and prevent getting stuck

12

by, open knives or needles. At that time, a plastic bag containing crack cocaine and powder cocaine fell out of the defendant's pants.

The Court finds that Officer Thacker, in conducting a pat down of defendant for weapons, did not invade the defendant's person beyond the outer surfaces of his clothes. Officer Thacker confined his search to what was minimally necessary to learn whether the defendant was armed. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find. Instead, Officer Thacker, having reasonable grounds to believe that the defendant was armed and dangerous, performed a restricted search for any type of weapon that could be used against him or his partner.

Having determined that Officer Thacker was justified in conducting a pat down search for weapons, and having likewise determined that he did not exceed the proper scope of a protective "frisk" under Terry, the Court finds that the evidence found on the defendant's person, which led to his subsequent arrest, was lawfully discovered and seized by Officer Thacker. Thus, the Court finds that the defendant's Fourth Amendment rights were not violated. As such, the Court recommends that the District Court deny the defendant's request to suppress the evidence of crack cocaine and powder cocaine seized from his person.

Warrantless arrests - and searches incident thereto - are permitted where there is probable cause to believe a felony is being or has been committed by the arrested individual, based upon "the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31 (1983). In this case, Officer Thacker discovered crack cocaine on the defendant's person during a lawful pat down. Moreover, the defendant admitted that it was crack. Thus, the Court finds that Officer Thacker had probable cause to arrest the defendant. See United States v. Padro, 52 F.3d 120, 122 (6th Cir. 1995)

13

(stating that probable cause has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than suspicion"). Having found that there was probable cause to make the arrest, the Court also finds that the search of the defendant's person incident to his arrest and the inventory search of the defendant's vehicle preparatory to impounding the vehicle were lawful.

Assuming there is probable cause to arrest, the police may make a full search of the suspect for both weapons and evidence as a search incident to arrest. See United States v. Robinson, 414 U.S. 218, 229 (1973); United States v. Hughes, 898 F.2d 63, 64 (6th Cir. 1990) (upholding seizure of crack cocaine from match box in defendant's hand as valid search incident to arrest). Additionally, a warrantless inventory search of the possessions of an arrested person held in custody is an "entirely reasonable administrative procedure," by which a defendant's Fourth Amendment rights are not violated. United States v. McCory, 102 F.3d 239, 240-41 (6th Cir. 1996) (upholding inventory search of defendant's wallet while he was held in temporary detention and seizure of pawn ticket which led to stolen rifles), cert. denied, 520 U.S. 1180 (1997); see also United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (holding that "when a driver is lawfully arrested and thus disabled from continuing his journey, the Constitution permits the police to carry out a routine inventory examination incident to impounding the vehicle").

In the present case, the defendant contends that the evidenced seized from his person, as well as the evidence seized from the vehicle he was driving should be suppressed. The Court has found that Officer Thacker had probable cause to arrest the defendant. Thus, Officer Thacker was entitled to make a full search of the defendant for both weapons and evidence as a search incident to arrest. Additionally, once the defendant was arrested and placed in custody, the officers were

14

entitled to impound the defendant's vehicle and conduct an inventory search of the vehicle's contents. The Court finds that the evidence seized, namely pills and cash, was seized incident to the defendant's arrest and incident to the impounding of the defendant's vehicle. Thus, the defendant's Fourth Amendment rights were not violated. As such, the Court recommends that the District Court deny the defendant's request to suppress the evidence seized incident to his arrest and the evidence seized preparatory to the impounding of his vehicle.

### C. Statements

The Court next addresses the statements made by the defendant to Officer Thacker regarding cocaine found on his person during a pat down. The defendant asserts that his seizure was illegal and therefore any statement taken after his seizure, whether or not they were made after being warned, were tainted by the illegal seizure and must be suppressed. Alternatively, the defendant asserts that, even if his seizure was legal, the statements were elicited in violation of his Fifth Amendment right against self-incrimination because he was in custody and received no Miranda warnings. The government contends that the defendant's statements should not be suppressed because the defendant was seized for purposes of an investigatory stop and was not in custody for purposes of Miranda.

The Court finds the following facts occurred during the pat down of the defendant: As Officer Thacker was checking around the defendant's ankle for weapons, he gave the defendant's pant leg a brief shake to check for weapons, such as open knives or needles. At that time, a plastic bag containing crack cocaine and powder cocaine fell out of the defendant's pants. The defendant, without provocation from Officer Thacker, stated that it wasn't his [first statement]. Officer Thacker

15

asked him what it was and where it came from. The defendant responded by stating that he knew it was crack but that it wasn't his [second statement]. The defendant was then placed under arrest.

The Court has found that the defendant was properly seized and detained pursuant to a lawful investigative stop. Thus, the defendant's statements were not tainted by an illegal seizure and should not be suppressed on this basis. Additionally, the Court finds that the defendant's first statement was volunteered, in that no questioning took place prior to his making the statement. Thus, the admissibility of this statement is not implicated by Miranda and should not be suppressed. See United States v. Murphy, 107 F.3d 1199, 1204-05 (6th Cir. 1997) (where no questioning took place, defendant's voluntary statements made while in custody in police cruiser found admissible despite absence of Miranda warnings); United States v. Montano, 623 F.2d 147, 149 (6th Cir. 1980) (defendant's voluntary statements without pressure or questioning by an interrogator not implicated by Miranda).

The Court must now consider whether the defendant was "in custody" during the investigatory detention for the purposes of determining whether his Fifth Amendment rights were violated as to his second statement. If the seizure of the defendant approached the custodial circumstances of a formal arrest, the defendant was entitled to Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 478-79 (1996) (holding that law enforcement officers cannot interrogate suspect who is in custody until they advise suspect of his or her rights under Fifth Amendment). However, if the defendant was not "in custody," Miranda warnings were not required. See United States v. Warner, 971 F.2d 1189, 1201 (6th Cir. 1992).

In determining whether a defendant was in custody, the Court examines the totality of the circumstances to ascertain the reasonable person's understanding of the situation. United

16

States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998). Relevant to the inquiry, the factors that courts have relied upon include:

> (1) whether defendant was free to leave; (2) the purpose of the questioning; (3) whether the place of questioning was hostile or coercive; (4) the length of questioning; and (5) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officer to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police...[or] acquiesced to their requests to answer some questions.

Salvo, 133 F.3d at 950; see also United States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003).

In the present case, the defendant was detained pursuant to an investigative Terry stop and was not free to leave. When conducting a Terry stop, an officer may stop a person upon reasonable suspicion of criminal activity and "ask the detainee a moderate number of questions to...obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 439-41 (1984). The Supreme Court has held that the very nature of a Terry stop means that a detainee is not free to leave during the investigation, yet is not entitled to Miranda rights. Id. The Sixth Circuit has concluded that this factor weighs in favor of the defendant being in custody at the time he made the statement. See Swanson, 341 F.3d at 529 (holding that detention pursuant to Terry stop weighed in favor of finding that defendant was in custody when questioned). Nevertheless, the Court finds this factor is not entitled to much weight under the circumstances, because a defendant detained pursuant to a Terry stop would rarely be free to leave until the investigation was concluded.

The Court finds that the place and length of the questioning was not hostile or coercive. The defendant was questioned outside, in a public place. "[E]xposure to public view both

17

reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." Berkemer, 468 U.S. at 438. The Sixth Circuit has found the parking lot of a Burger King restaurant, Salvo, 133 F.3d at 951, and outside of a tattoo parlor, Swanson, 341 F.3d at 529, to be non-coercive locations. Similarly, the Court finds that an Amoco gas station parking lot is not a coercive location. Also, only minutes elapsed between the defendant being stopped and his being questioned outside of his car. In contrast to a station house interrogation, the Court finds that the length of questioning weighs in favor of it being non-custodial. See Berkemer, 468 U.S. at 438 (observing that "questioning incident to an ordinary traffic stop is quite different from station [ ] house interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek").

The Court finds that at the time of questioning, the defendant did not have unrestrained freedom of movement in that he was handcuffed. Although this factor weighs in favor of the questioning being custodial, the Court places significant weight on the fact that the defendant was specifically advised by Officer Thacker that he was not being placed under arrest, that he was just being detained for questioning regarding the incident at Utica Circle, and that he was only being patted down to make sure he did not have any weapons. See Salvo 133 F.3d at 951 (statement by law enforcement that suspect is not under arrest is important part of analysis of whether suspect was "in custody").

Additionally, the Court finds that there were only two officers on the scene at the time the defendant was questioned and only Officer Thacker questioned the defendant. The defendant's one-on-one conversation with Officer Thacker is more akin to the ordinary traffic stop

18

described by the Supreme Court in <u>Berkemer</u>. <u>Berkemer</u>, 468 U.S. at 439-40 (noting that when defendant is detained by only one or two officers, his or her sense of vulnerability is reduced during that stop). Thus, the Court finds this factor weighs in favor of the questioning being non-custodial.

In considering the totality of the circumstances surrounding the defendant's detention and questioning pursuant to a lawful <u>Terry</u> stop, the Court finds that the circumstances were not custodial or tantamount to the defendant being formally arrested. In light of the report that the suspect had a firearm, the officers were entitled to take certain precautions in effectuating the stop - such as placing the defendant in handcuffs. These precautions limited the defendant's movement, but did not convert the stop into a formal arrest. Thus, in light of all the circumstances surrounding the investigative stop, particularly the brief duration of the stop and the fact that the defendant was explicitly told he was not under arrest, the Court finds that the defendant's statement was not elicited in violation of the Fifth Amendment. Consequently, the Court finds that the defendant was not entitled to the <u>Miranda</u> warnings prior to making his statement. The Court recommends that the District Court deny the defendant's request to suppress his statements following his stop.

### III. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case, or to suppress the statements made by the defendant.

19

Case 3:05-cr-00114  Document 18  Filed 02/03/06  Page 19 of 20  PageID #: 21

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [Doc. 13] be **DENIED**.[1]

                                              Respectfully submitted,

                                                 s/ H. Bruce Guyton
                                              United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).